IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

WRENNETTE STEWART AND PHILLI STEWART, SR., INDVIDUALLY AND AS NEXT FRIEND OF PHILLI STEWART, JR., A MINOR

Plaintiffs,

vs.

C. R. BARD, INC., AND DAVOL INC.

Defendants.

CASE NO. 1:07cv640

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

DEMAND FOR JURY TRIAL

**NATURE OF THE CASE**

1. Plaintiffs, Wrennette Stewart and Philli Stewart, Jr., developed serious and potentially life-threatening medical conditions caused by the surgical insertion of a defective patch manufactured by Defendants ("Bard® Composix® Kugel® Hernia Patch"). This lawsuit asserts claims for negligence; strict product liability for failure to warn; strict product liability for design defect; and breach of implied warranty against the defendants responsible for the design, manufacture, production, testing, study, inspection, labeling, marketing, advertising, sales, promotion and/or distribution of the patch that caused Wrenneet Stewart and Philli Stewart, Jr.'s medical conditions.

**JURISDICTION AND VENUE**

2. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 (diversity of citizenship). The matter in controversy in this civil action exceeds the sum or value of $75,000, exclusive of costs and interests, as to each defendant and is between citizens of different states.

3. Venue in this District is proper under 28 U.S.C. §1391. The events and omissions giving rise to this cause of action occurred in substantial part in this District, where defendants transact business.

## THE PARTIES

### Plaintiff

4. At all relevant times plaintiffs were residents and citizen of Jefferson County, Texas.

### Defendants

5. Defendant C. R. Bard, Inc., is a New Jersey corporation with its principal place of business in New Providence, Union County, New Jersey and may be served with process through its Vice President and General Counsel to wit:

Stephen J. Long
730 Central Avenue
New Providence, NJ 07974

6. Defendant Davol Inc., is a Delaware corporation with its principal place of business in New Providence, Union County, New Jersey and may be served with process through its Vice President and General Counsel to wit:

Nadia J. Bernstein
730 Central Avenue
New Providence, NJ 07974

## FACTUAL ALLEGATIONS

### Plaintiff's Injuries

7. Plaintiff Wrennette Stewart first had the patch implanted on July 27, 2005 as part of a surgery performed to repair an abdominal hernia.

8. Before her six week check up Mrs. Stewart noticed soreness and hardness around the hernia repair site.

9. On November 9, 2005, Mrs. Stewart learned that she was pregnant with her fourth child.

10. Throughout Mrs. Stewart's pregnancy she experienced severe abdominal pain and infections caused by hernia repair patch.

11. On June 6, 2006 Mrs. Stewart was admitted to Christus St. Elizabeth Hospital for premature contractions caused by severe pain and infections caused by the hernia patch.

12. On June 8, 2006 only 27 weeks into her pregnancy, Dr. Humble performed an emergency c-section and delivered her son, Philli Stewart, Jr., weighing only two pounds and 14 ounces.

13. From June 8, 2006 until September 11, 2006 Plaintiff Philli Stewart, Jr., was admitted to Christus St. Elizabeth Hospital due to his premature birth caused by severe medical complications from the hernia patch his mother received.

14. Plaintiff, Philli Stewart, Jr., still has not developed completely and his pediatrician is not sure if he will overcome his physical and mental handicap caused by the hernia patch his mother received.

15. Plaintiff, Wrennette Stewart has been married to her husband, plaintiff Philli Stewart, Sr., at all relevant times. Plaintiff, Philli Stewart, Sr., asserts a claim of loss of consortium as a result of plaintiff, Wrennette Stewart's injuries.

**Defendants' Misconduct**

16. At all material times, each defendant was responsible for designing, manufacturing, producing, testing, studying, inspecting, mixing, labeling, marketing, advertising, selling, promoting and/or distributing their patch, which was implanted in plaintiff's abdomen.

17. Each defendant had an independent obligation to know, analyze and disclose scientific and medical information about the patch in a timely and adequate manner and to provide warnings about risks and side effects as soon as it was aware of them. Each defendant failed to do so with respect to the patch implanted in to the plaintiff, including by failing to know, analyze and/or disclose defects in the patch.

18. Each defendant made claims regarding the benefits associated with the implantation of the patch and the risks and side effects of the patch. Each defendant knew or should have known that these claims were false and misleading. They failed to adequately disclose the true health consequences and the true risks and side effects of the patch.

19. Each defendant failed to conduct adequate pre-marketing clinical testing and research and failed to conduct adequate post-marketing surveillance, to determine the safety of the patch.

20. Each defendant failed to disclose on their warning labels or elsewhere that adequate pre-marketing clinical testing and research and adequate post-marketing surveillance, had not been done, thereby giving the false impression that the patch had been sufficiently tested.

21. Each defendant knew or should have known that, at all material times, its communications about the benefits, risks and adverse effects of the patch, including communications in labels, advertisements and promotional materials, were materially false and misleading. In the alternative, each defendant was ignorant of whether or not its communications about the patch were true in material ways.

22. Plaintiff would not have agreed to allow the implantation of the patch described herein, had the defendants disclosed the true health consequences, risks and adverse events caused by the patch.

23. Each defendant's nondisclosures and misrepresentations as alleged herein were material and were substantial factors that contributed directly and causally and naturally and necessarily, to the serious injuries and damages that plaintiff has suffered.

24. Each defendant designed, manufactured and marketed the patch, a defective and unreasonably dangerous product.

**FRAUDULENT CONCEALMENT AND DISCOVERY**

25. Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by defendants when they had a duty to disclose those facts. They have kept plaintiff ignorant of vital information essential to her pursuit of these claims, without any fault or lack of diligence on plaintiff's part, for the purpose of obtaining delay on plaintiff's part in filing a complaint on her causes of action. Their fraudulent concealment did result in such delay.

26. Plaintiff could not reasonably have discovered the claims made herein until shortly before filing this complaint.

27. The defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch that was implanted in the plaintiff, but instead they

concealed them. As a result, defendants are estopped from relying on any statute of limitations defense.

## CLAIMS FOR RELIEF

### First Claim
### (Negligence)

28. Plaintiff realleges all previous paragraphs.

29. Defendants introduced the patch described herein into the stream of commerce.

30. At all material times, defendants had a duty to plaintiff and other consumers of the patch to exercise reasonable care in order to properly design, manufacture, produce, test, study, inspect, label, market, advertise, sell, promote and distribute these products. That includes a duty to warn of side effects and to warn of the risks, dangers and adverse events associated with the patch. Defendants had a similar duty to warn plaintiff's physicians of those factors.

31. Defendants knew, or in the exercise of reasonable care should have known, that the patch was of such a nature that it was not properly designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold, promoted and distributed and they were likely to cause injury to those in whom they were implanted.

32. Defendants were negligent in the design, manufacture, production, testing, study, inspection, labeling, marketing, advertising, sales, promotion and distribution of the patch and breached duties they owed as set forth herein. In particular, defendants:

a. Failed to use due care in the design of the patch to prevent the aforementioned risks to those in whom the patches were implanted;

b. Failed to conduct adequate pre-clinical testing and research to determine the safety of the patch;

d. Failed to conduct adequate post-marketing surveillance to determine the safety of the patch;

e. Failed to accompany their products with proper warnings regarding all possible adverse side effects and complications associated with the use of the patch and the comparative severity and duration of such adverse

effects;

f. Failed to use due care in the manufacture of the patch to prevent the aforementioned risks to individuals in whom the patch was implanted;

g. Failed to adequately report adverse events associated the implantation of the patch.

h. Failed to use due care in the inspection of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

i. Failed to use due care in the labeling of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

j. Failed to use due care in the marketing of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

k. Failed to use due care in the promotion of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

l. Failed to use due care in the selling of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

m. Failed to provide adequate information to healthcare providers regarding the risks associated with the implantation of the patch;

n. Failed to adequately warn about the health consequences, risks and adverse events caused by the patch; and

o. Were otherwise careless and negligent.

28. Defendants knew or should have known that the patch caused unreasonable harm and dangerous side effects that many users would be unable to remedy by any means. Despite this, defendants continued to promote and market the patches use by consumers, including plaintiff.

29. It was foreseeable to defendants that consumers, including plaintiff, would suffer injury as a result of defendants' failure to exercise ordinary care as described herein.

30. As a direct and proximate result of defendants' conduct, plaintiff suffered the injuries and damages specified herein.

**Second Claim**
**(Strict Liability: Failure to Warn)**

31. Plaintiff realleges all previous paragraphs.

32. Defendants manufactured and/or supplied the patch described herein and at all material times were in the business of doing so. They placed those products into the stream of commerce. The patch was expected to and did, reach plaintiff without substantial change in its condition.

33. When defendants placed the patch into the stream of commerce, they failed to accompany them with adequate warnings of their dangerous propensities that were either known or reasonably scientifically knowable at the time of manufacture and distribution.

34. Defendants failed to warn plaintiff's physicians and by extension plaintiff, of the true risks and dangers and of the symptoms, scope and severity of the potential complications of the patch.

35. Due to the inadequate warnings as alleged herein, at the time the patch left defendants' hands, it was unreasonably dangerous and defective.

36. Had defendants provided adequate warnings and instructions, plaintiff would not have had the patch implanted and would not have suffered the personal injuries he did.

37. The defect in the product was a producing cause of the injuries and damages specified herein.

**Third Claim**
**(Strict Liability: Design Defect)**

38. Plaintiff realleges all previous paragraphs.

39. Defendants manufactured and/or supplied the patch described herein and at all material times were in the business of doing so. They placed the patch into the stream of commerce. The patch was expected to and did, reach plaintiff without substantial change in its condition.

40. At time the patch left defendants' hands, it was in a condition not contemplated by plaintiff. Specifically, it was defectively designed and unreasonably dangerous as applicable

law defines those terms.

41. The patch was dangerous to an extent beyond that which would be contemplated by the ordinary consumer. It was more dangerous than plaintiff contemplated.

42. The risks associated with the use of the patch outweighed its utility.

43. At the time of manufacture, the likelihood the product would cause the plaintiff's harm or similar harms coupled with the seriousness of those harms, outweighed defendants' burden in designing a product that would have prevented those harms.

44. There were practicable and feasible safer alternatives to the defendants' could have produced and sold.

45. The design defects in the product were a producing cause of the injuries and damages specified herein.

**Forth Claim**
**(Breach of Implied Warranty)**

46. Plaintiff re-alleges all previous paragraphs.

47. At the time defendants designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold, promoted and distributed the patch for use by plaintiff, they knew of the use for which the patch was intended and impliedly warranted their products to be of merchantable quality and safe and fit for their intended use.

48. Contrary to such implied warranty, the patch was not of merchantable quality, was not safe and/or was not fit for its intended use. It was unreasonably dangerous and unfit for the ordinary purposes for which they were used, as alleged herein. Defendants failed to warn of known or reasonably scientifically knowable defects in the patch.

49. As a direct and proximate result of defendants' conduct, plaintiff suffered the injuries and damages specified herein.

**Fifth Claim Against All Defendants**
**(Loss of Consortium)**

50. Plaintiff's spouse, Philli Stewart, Sr., realleges all previous paragraphs.

51. Plaintiff Philli Stewart, Sr., should be awarded monetary damages for his loss of spousal services, society and companionship.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff seeks judgment against the defendants, jointly and severally, as follows:

52. Economic and non-economic damages in an amount in excess of $75,000 as to each defendant as provided by law and to be supported by the evidence at trial;

53. An award of attorneys' fees and costs of suit, if allowed by law; and

54. Such other legal and equitable relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury.

Respectfully submitted,

Dated: September 21, 2007

PROVOST ★ UMPHREY LAW FIRM, L.L.P.

By: ______________________________

Christopher T. Kirchmer
Texas Bar No. 00794099
P.O. Box 4905
Beaumont, TX 77704
Tel: (409) 835-6000
Fax: (409) 813-8612